IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| REGINALD R. YORK, | ) | No. C 09-6080 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT; REFERRING CASE TO |
| | ) | PRO SE PRISONER SETTLEMENT |
| J. HERNANDEZ, | ) | PROGRAM |
| | ) | |
| Defendant. | ) | |

Plaintiff, a California prisoner proceeding *pro se*, filed an amended civil rights action pursuant to 42 U.S.C. § 1983 against Defendant J. Hernandez. Defendant has filed his motion for summary judgment on November 24, 2010, arguing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Plaintiff has filed his opposition, and Defendant has filed his reply. Having carefully considered the papers submitted, Defendant's motion for summary judgment is DENIED.

## BACKGROUND[1]

Plaintiff was an inmate at Salinas Valley State Prison ("SVSP"). (Amended Complaint ("AC") at 2.) Around January 2005, Plaintiff received a radio from Inmate Bernardis as compensation for assisting Bernardis with his "legal work." (Decl. Grigg ("Pl. Depo.") at 34, 42.) Plaintiff knew that inmates were not allowed to sell or barter goods, and therefore, he was

---

[1] The following facts are undisputed unless otherwise indicated.

not allowed to possess that radio. (*Id.* at 46.) On February 15, 2006, Defendant came to Plaintiff's cell and noticed his radio. (*Id.* at 43-44.) Plaintiff brought the radio to Defendant at his request. (AC at 2; Pl. Depo. at 45.) Plaintiff brought the radio to the door. (*Id.* at 46.) Defendant opened the food port, and Plaintiff opened the lid to the radio, so that they could slide the radio out through the food port. (*Id.*) Defendant informed Plaintiff that the radio, in fact, belonged to Defendant. (AC at 2; Pl. Depo. at 48.) Defendant explained that he had lost the radio, and, before he could get it back, a sergeant had given it to someone else to settle an administrative appeal. (AC at 2; Pl. Depo. at 48.) Defendant looked at the radio and noticed that it had the name "Sherman," another inmate, inscribed on it. (AC at 2.) Defendant returned the radio to Plaintiff. (Pl. Depo. at 52.) Defendant verified that Plaintiff's possession of the radio was improper before he attempted to confiscate it. (Def. Decl. at ¶¶ 5-6.)

At this point, the parties' recollection of events differs. According to Plaintiff, the following day, on February 16, 2005, Defendant returned to Plaintiff's cell and informed him that he spoke with Inmate Sherman who told him that Defendant could have his radio back. (Pl. Depo. at 56.) Plaintiff told Defendant that the radio was his and did not belong to Sherman. (*Id.* at 58.) Defendant ordered Plaintiff to "Give me my shit." (*Id.*) Plaintiff asked about getting compensation in return for his property, and Defendant stated that he did not care about that. (*Id.* at 60.) Plaintiff stated that if Defendant wanted the radio, Defendant could call the sergeant, Defendant's supervisor, and Plaintiff would give it to him. (*Id.* at 60-61.) Defendant waited 10 to 20 seconds, and then he told Plaintiff he was going to conduct a cell search and get the radio. (*Id.* at 61-63.) Plaintiff got up from his seat and began to walk toward the radio to unplug it. (*Id.* at 64.) At that time, Defendant was yelling at Plaintiff to comply with his direct order.[2] (*Id.*) In response, Plaintiff took the radio and threw it onto the ground, about four to five feet away from the cell door. (*Id.* at 65, 69.) Plaintiff then picked up the broken radio parts and placed them in the food port for Defendant. (*Id.*)

---

[2] There appears to be some conflict as to whether Defendant ordered Plaintiff to "cuff up." (Pl. Depo. at 63-66.) Viewing the facts in the light most favorable to Plaintiff, Defendant's statement that he was about to conduct a cell search included an implicit order that he wanted Plaintiff to cuff up. (*Id.* at 66.)

1         When Defendant realized that Plaintiff had broken the radio, Plaintiff remembers Defendant "hollering and cussing," but does not recall anything Defendant actually said. (*Id.* at 75-76.) Plaintiff watched Defendant knock off part of the radio from the food port and kick it. (*Id.* at 78.) Then, Defendant took out a pepper spray canister and sprayed Plaintiff in the face for less than 20 seconds. (*Id.* at 80-86; Def. Decl. at ¶ 15.) After Plaintiff was sprayed, his eyes teared up, he began to cough, and his face stung. (Pl. Depo. at 81.) Plaintiff never heard Defendant order him to submit to handcuffs or to get down. (*Id.* at 86.) A few minutes after Plaintiff was sprayed, he was taken to the health annex. (*Id.* at 89.) After about one week, the burning sensation ceased. (*Id.* at 102.)

        On the other hand, according to Defendant, on February 16, 2005, Defendant returned to Plaintiff's cell with Officer Rodriguez. (Def. Decl. at ¶ 7; Rodriguez Decl. at ¶ 4.) Defendant informed Plaintiff that he was confiscating the radio, at which point, Plaintiff became angry and aggressive. (Def. Decl. at ¶ 8; Rodriguez Decl. at ¶ 5.) Defendant ordered Plaintiff to either surrender the radio or cuff up. (Def. Decl. at ¶ 9.) Plaintiff ignored that order, and then refused a to comply with Defendant's repeated order. (*Id.* at ¶ 10.) Defendant's third order to Plaintiff was that he cuff up so that Defendant could search his cell. (*Id.*) Rather than cooperate, Plaintiff grabbed the radio and threw the radio at Defendant. (*Id.*) The radio hit the food tray, which was open, broke apart, and hit Defendant in the abdomen. (*Id.* at ¶ 11; Rodriguez Decl. at ¶ 6.) Defendant was concerned at Plaintiff's violence and anger, and Officer Rodriguez immediately summoned other officers. (Def. Decl at ¶ 12; Rodriguez Decl. at ¶ 6.) Defendant was worried about the potential for Plaintiff to assault him or his cellmate, and ordered Plaintiff to get down. (*Id.*) Plaintiff ignored repeated Defendant's orders to get down, so Defendant pulled out his pepper spray. (*Id.* at ¶ 13.) Plaintiff appeared to be grabbing another object and, believing that he needed to stop any potential threat, Defendant sprayed the pepper spray toward Plaintiff's facial area. (*Id.* at ¶ 15.) Plaintiff finally complied with the orders to get down, and officers handcuffed him and took both Plaintiff and his cellmate to decontamination. (*Id.* at ¶¶ 15-16.)

# ANALYSIS

## I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

II.     Legal Claims and Analysis

Plaintiff alleges that Defendant used excessive force against him, in violation of his Eighth Amendment right against cruel and unusual punishment. Defendant argues that he is entitled to summary judgment because, based on the undisputed facts, he did not violate Plaintiff's constitutional rights. In the alternative, Defendant contends he is entitled to qualified immunity.[3]

The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Id.* at 6-7. In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7. In reviewing these factors, courts must accord prison administrators wide-ranging deference in the adoption and execution of polices and practices to further institutional order and security. *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

---

[3] In its order of service, this Court found that Plaintiff raised a claim that Defendant violated his right to due process by filing false charges against him. However, without more, a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Moreover, Plaintiff appears to have abandoned this claim. In addition, in his opposition, Plaintiff alleges that Defendant's failure to adhere to CDCR Rules violated his Fourteenth Amendment rights. (Opp. at 8.) However, a violation of state regulations is not an automatic federal constitutional violation, and Plaintiff fails to support his claim. Accordingly, the due process claim is DISMISSED without prejudice.

Taking the evidence in the amended complaint as true, and drawing all inferences therefrom in plaintiff's favor, there is a genuine issue of material fact as to whether Defendant's use of force was excessive. According to Plaintiff, he did not ignore Defendant's orders, and did not throw the radio at Defendant, nor did any portion of the radio hit Defendant. Plaintiff's version of events implies that Defendant was angry because Plaintiff broke the radio, and Defendant reacted by spraying Plaintiff. Accepting this account as true, an inference could certainly be drawn that Defendant used his pepper spray against Plaintiff for the purpose of causing harm.

Having concluded that genuine issues of material fact exist as to whether Defendant used excessive force against Plaintiff in violation of the Eighth Amendment, the Court next addresses whether he is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A Court considering a claim of qualified immunity must determine whether the Plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Regarding the first prong, the threshold question must be, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

The Court finds granting summary judgment on the ground of qualified immunity is improper in this case. A dispute of fact exists as to, *inter alia*, whether Plaintiff disregarded Defendant's orders to cuff up; whether Plaintiff threw the radio toward Defendant, striking him through the food port; and whether Plaintiff then disregarded Defendant's later orders to get down. Resolving all factual disputes in favor of Plaintiff, the Court concludes Defendant

1  violated Plaintiff's clearly established right to be free from excessive force.  *See Martinez v.*
2  *Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's use of
3  excessive force was clearly established by 1994").  Granting summary judgment on the ground
4  of qualified immunity is "improper if, under the plaintiff's version of the facts, and in light of the
5  clearly established law, a reasonable officer could not have believed his conduct was lawful."
6  *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).  Here, based on Plaintiff's version of
7  the facts, no reasonable officer could believe that pepper spraying Plaintiff under those
8  circumstances was permitted under the Eighth Amendment.

9        In sum, accepting Plaintiff's allegations as true, there is a genuine issue of fact as to
10  whether Defendant violated Plaintiff's constitutional rights.  Accordingly, Defendant is not
11  entitled to summary judgment.

12  III.    <u>Referral to Pro Se Prisoner Settlement Program</u>

13        Prior to setting this matter for trial and appointing pro bono counsel to represent Plaintiff
14  for that purpose, the Court finds good cause to refer this matter to Judge Vadas pursuant to the
15  Pro Se Prisoner Settlement Program for settlement proceedings on the claim set forth above.
16  The proceedings will consist of one or more conferences as determined by Judge Vadas.  The
17  conferences shall be conducted with Defendant, or his representative, attending by
18  videoconferencing if they so choose.  If these settlement proceedings do not resolve this matter,
19  the Court will then set this matter for trial and consider a motion from Plaintiff for appointment
20  of counsel.

21                                    **CONCLUSION**

22        1.    Defendant's motion for summary judgment is DENIED.
23        2.    The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner
24  Settlement Program for settlement proceedings on the remaining claim in this action, as
25  described above.  The proceedings shall take place within **one-hundred twenty (120) days** of
26  the filing date of this order.  Judge Vadas shall coordinate a time and date for a settlement
27  conference with all interested parties or their representatives and, within **ten (10) days** after the
28  conclusion of the settlement proceedings, file with the Court a report regarding the prisoner
    settlement proceedings.  If these settlement proceedings to do not resolve this matter, Plaintiff

1 can file a renewed motion for appointment of counsel and the Court will then set this matter for
2 trial.
3     3.    The Clerk of the Court shall mail a copy of the Court file, including a copy of
4 this order, to Judge Vadas in Eureka, California.
5     4.    The instant case is STAYED pending the settlement conference proceedings.
6 IT IS SO ORDERED.
7 DATED: _7/2/11_____  
                                                LUCY H. KOH  
8                                                 United States District Judge